Exhibit G

J. R. Miller, letter to J. Mark Pohl (Aug. 15, 2021)

THE LAW FIRM OF
# JONATHAN R. MILLER

Jonathan R. Miller, Esq.
Admitted in NJ, NY & PA
jonathan.miller@lawyer.com

Web: jmillerlawfirm.com
Cell: 609-955-1226
Fax: 609-964-1026

Main Office:
100 Overlook Center, 2nd Floor
Princeton, N.J. 08540

New York Office:
186 Joralemon St., Suite 1202
Brooklyn, N.Y. 11201

August 15, 2021

**VIA U.S. MAIL**
J. Mark Pohl, Esq.
Pharmaceutical Patent Attorneys, LLC
55 Madison Avenue, 4th Floor
Morristown, N.J. 07960

Re:   ParActin® — Panicin™

Dear Mr. Pohl:

I represent Sabinsa Corporation, owner of the Panicin™ mark. I write in response to your July 27, 2021 letter, written on behalf of the owner of the ParActin® mark, HP Ingredients Corp. f/k/a Herbal Powers Corp. (hereinafter, "Herbal Powers"), asserting that the two marks are confusingly similar and demanding that Sabinsa cease and desist from selling Panicin-branded products.

Contrary to your letter, I do not find the marks to be confusingly similar. As an initial matter, your claim that Sabinsa intentionally ends its Panicin mark with the letters "in" in order to misappropriate Herbal Powers' "good reputation," is without merit. With minimal research, one can confirm that Sabinsa routinely ends its trademarks with "in" as a branding element, including: Samiflozin®, Bacopin®, GarCitrin®, LactoSporin®, Nigellin®, Nulaurin™, Salaretin®, Cratavin®, Obestilin®, Centellin®, Powerin™, Citrin®, Venocin®, Momordicin®, Chilicin®, Proscalpin™, CitruCyn®, Sapindin®, Turmerin®, Boswellin®, Curcousin™, Cococin™, Tinofolin®, Xylosin®, etc.

Moreover, "Panicin" and "ParActin" are dissimilar in connotation. "Panicin" quite plainly derives from and references the Andrographis paniculata plant, from which it is extracted. "ParActin," on the other hand, derives from and references actin, which is a group of proteins that play a central role in muscle contraction. This connotation is reinforced by emphasizing the "Actin" part of "ParActin" by capitalizing the "A" in plain text, using capitalization plus light green coloring in the stylized mark, and, on the product website, by explicitly referencing "Bone, Joint & Muscle Health" in the tag line immediately below the ParActin mark. See http://paractin.com (last accessed 8/10/21).

The actin association is further confirmed by NeuroActin®, another nutraceutical marketed by Herbal Powers, also derived (apparently) from Andrographis paniculata.[1] See https://hpingredients.com/products/premier-ingredients/neuroactin/ (last accessed 8/10/21).

---

[1] Many other "live" trademarks owned by various third parties highlight "actin" similarly to ParActin and NeuroActin, including: ViralActin®, Q-Actin®, Inflam-Actin®, Prost-Actin®, Ultra Virile-Actin®, and Actin®.

JONATHAN R. MILLER

"Panicin" and "ParActin" are also dissimilar in sound. The third syllable of the marks are markedly different: the soft "c" in "cin" sounds nothing like the "t" in "tin". Also, in Panicin the first syllable is emphasized, versus the second syllable of ParActin.

Any putative likelihood of confusion is further dispelled by the fact that Panicin and ParActin are different products marketed to different groups of consumers. Panicin is marketed and sold as a bulk ingredient to manufacturers in the food, beverage and supplement industries, while ParActin appears to be a product marketed directly to consumers. *Compare* https://sabinsa.com/products-and-services/standardized-phyto-extracts/ (last accessed 8/9/21) *with* https://paractin.com/where-to-buy-paractin/ (last accessed 8/9/21).

Moreover, even if HP Ingredients Corp. began to market ParActin as a bulk ingredient as well, industry buyers are sophisticated and the likelihood of confusion would be nil. "When consumers exercise heightened care in evaluating the relevant products before making purchasing decisions, courts have found there is not a strong likelihood of confusion. Where the relevant products are expensive, or the buyer class consists of sophisticated or professional purchasers, courts have generally not found Lanham Act violations." *Checkpoint Sys. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 284 (3d Cir. 2001)

Lastly, I note that, contrary to your July 27th assertion that the two marks are confusingly similar, on July 29th — just two days later — you signed a Class 1 trademark application for ParActin, in which you represented to the USPTO that "no other persons . . . have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive." In doing so, you omitted any mention of the "Panicin" mark, including the fact that "Panicin" was published for opposition in December 2020; that your client did not file any objection at that time; that Sabinsa obtained a notice of allowance in February 2021; and that the "Panicin" mark will be registered upon Sabinsa filing a statement of use.

In short, there does not appear to be a bona fide basis for contending that "Panicin" is confusingly similar to "ParActin." That being said, should you wish to better explain your analysis, we are willing to review it in good faith.

Yours truly,

Jonathan R. Miller

cc:     Client