UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HP INGREDIENTS CORP., <br><br> Plaintiff, <br><br> v. <br><br> SABINSA CORPORATION, <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> HAME PERSAUD, J. MARK POHL, ESQ., PHARMACEUTICAL PATENT ATTORNEYS, LLC, and HEALTH SCIENCE FUNDING, LLC, <br><br> Third-Party Defendants. | Civil Action No. 21-cv-16800 (GC) (RLS) <br><br><br> **MEMORANDUM OPINION AND ORDER** |

SINGH, United States Magistrate Judge.

This matter comes before the Court upon the Motion of Defendant/Third-Party Plaintiff Sabinsa Corporation ("Sabinsa") to Disqualify Counsel, J. Mark Pohl, Esq. ("Pohl"), from representing Plaintiff HP Ingredients Corporation ("HP Ingredients") in the instant matter (the "Motion"). (Dkt. No. 20). Pohl opposes the Motion, (Dkt. No. 21), and Sabinsa has replied, (Dkt. No. 25). The Court has fully reviewed the submissions of the parties and considers the same without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1(b). For the reasons set forth below, Sabinsa's Motion is GRANTED.

## I. BACKGROUND AND PROCEDURAL HISTORY

HP Ingredients markets and sells herbal extracts to retail and wholesale purchasers. (Complaint, Dkt. No. 1, at ¶¶ 2, 20). One of those extracts is PARACTIN®, a *Andrographis*

1

*paniculate* herbal extract. (Dkt. No. 1 at ¶ 2). HP Ingredients has a trademark for PARACTIN®, registered as of January 10, 2006 with the United States Patent and Trademark Office ("USPTO"). (Dkt. No. 1 at ¶¶ 4, 11).

Sabinsa manufactures, markets, and supplies herbal extracts, among other products, to nutritional, cosmetic, pharmaceutical, and food industries. (Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint, Dkt. No. 9, at p. 11, ¶ 12). Since "at least November 1997," Sabinsa has marketed and sold an *Andrographis paniculate* herbal extract. (Dkt. No. 9 at p. 12, ¶ 17, and p. 18, ¶ 51). On July 29, 2020, Sabinsa applied for a trademark for PANICIN, the name of its *Andrographis paniculate* herbal extract. (Dkt. No. 9 at p. 18, ¶ 52).

On September 13, 2021, HP Ingredients filed a Complaint against Sabinsa, alleging that Sabinsa's marketing and selling of PANICIN infringes upon HP Ingredients' intellectual property and registered trademark covering PARACTIN®. (*See generally* Dkt. No. 1). HP Ingredients also alleges that Sabinsa's marketing and advertising of the PANICIN product is "false and deceptive." (Dkt. No. 1 at ¶ 23).

On November 26, 2021, Sabinsa filed its Answer, Affirmative Defenses, Counterclaim, and Third-Party Complaint against Pohl, Hame Persaud, Pharmaceutical Patent Attorneys, LLC ("PPA"), and Health Science Funding, LLC ("HSF"). (Dkt. No. 9). Notable on the instant Motion, through its Third-Party Complaint, Sabinsa alleges, among other things, that Pohl and his firm, PPA, breached fiduciary duties owed to Sabinsa as its prior counsel. (Dkt. No. 9 at p. 10, ¶ 2, pp. 12-16, ¶¶ 19-40, and pp. 21-22, ¶¶ 75-82). More specifically, Sabinsa alleges that, upon information and belief, Pohl and PPA served as counsel to HP Ingredients "since at least 2004." (Dkt. No. 9 at p. 12, ¶ 19, and p. 16, ¶ 41). However, for about six months during 2009 to 2010, Pohl engaged in confidential communications with Sabinsa's founder, Muhammed Majeed, Ph.D.

2

("Majeed"), and discussed serving as Sabinsa's patent and trademark counsel. (Dkt. No. 9 at p. 12, ¶¶ 21-22). Through those conversations, Sabinsa shared confidential documents and information. (Dkt. No. 9 at p. 13, ¶¶ 25, 30, and pp. 15-16, ¶¶ 37, 38). Sabinsa alleges that an attorney-client relationship arose as a result of the extended discussions between Sabinsa and Pohl at PPA, triggering ethical and fiduciary obligations of loyalty and confidentiality owed to Sabinsa. (Dkt. No. 9 at p. 16, ¶ 39).

## II. THE PARTIES' ARGUMENTS

Sabinsa now moves to seek the disqualification of Pohl as counsel for HP Ingredients. (Dkt. No. 20). Sabinsa argues that it is a former client of Pohl and his firm, PPA, and that, as a result, a conflict exists under New Jersey Rules of Professional Conduct ("RPC") 1.9, requiring disqualification of Pohl. (*See* Dkt. No. 20-1 at p. 1). Sabinsa further contends that, even if RPC 1.9 did not warrant disqualification, Pohl should be disqualified under RPCs 1.7(a) and 1.8(i) because Pohl has a personal interest in this action and, as alleged by Sabinsa, likely has an ownership interest in HP's PARACTIN®-related revenue. (Dkt. No. 20-1 at p. 18).

In support of its Motion, Sabinsa proffers the Certification of Majeed. (Dkt. No. 20-2). Through that Certification, Majeed certifies that he, on behalf of Sabinsa, and Pohl had "extensive confidential discussions . . . concerning Sabinsa's own legal affairs and intellectual property portfolio, interests and revenue[.]" (Dkt. No. 20-2 at ¶ 3). More specifically, Majeed states that these conversations occurred over "at least six months" in 2009 through 2010. (Dkt. No. 20-2 at ¶ 14). Majeed and Pohl discussed Sabinsa's intellectual property and lawsuit strategies involving its *Coleus forskohlii* herbal extract, Forslean®. (Dkt. No. 20-2 at ¶¶ 15-18). Majeed and Pohl also discussed a contract dispute between Sabinsa and one of its Forslean® customers and "Sabinsa's supply-chain challenges, increased raw material costs, wholesale pricing, and profitability." (Dkt.

3

No. 20-2 at ¶ 20). Majeed certifies that Pohl reviewed Sabinsa documents and correspondence and provided legal advice and recommendations. (Dkt. No. 20-2 at ¶ 22; Dkt. No. 20-3).

However, Sabinsa did not receive any invoices from Pohl or PPA and did not pay Pohl or PPA for their services. (Dkt. No. 20-2 at ¶ 23). Instead, Pohl proposed a written Agreement between PPA and Sabinsa, providing for a payment and ownership interest to PPA in exchange for PPA's strategic insights on prosecuting at least one Forslean®-related patent to the USPTO. (Dkt. No. 20-2 at ¶¶ 24-25; Dkt. No. 20-4). Sabinsa rejected the Agreement because it provided for a large upfront payment and grant of ownership interest to PPA in the Forslean®-related royalties and licensing fees. (Dkt. No. 20-2 at ¶ 26). Although Sabinsa rejected the Agreement, Majeed and Pohl continued to discuss Sabinsa's commercial and intellectual property strategy and interests. (Dkt. No. 20-2 at ¶ 27). Those conversations involved confidential information relating to Sabinsa's competitive approach, customer information, sales and revenue data, assets, revenue projections, and legal topics. (Dkt. No. 20-2 at ¶¶ 27, 29).[1] Majeed contends that Sabinsa and Pohl were in an attorney-client relationship and that he believed his conversations with Pohl to be confidential and subject to the attorney-client privilege. (Dkt. No. 20-2 at ¶¶ 28, 31). Majeed adds that Sabinsa did not consent to Pohl's representation of HP Ingredients in this lawsuit. (Dkt. No. 20-2 at ¶ 34).

Pohl opposes the Motion. (Dkt. No. 21). Notably, Pohl does not dispute that he received confidential information from Sabinsa and Majeed. Rather, Pohl contends that RPC 1.9 does not warrant his disqualification because an attorney-client relationship was not formed. (Dkt. No. 21

---

[1] Sabinsa also avers through Majeed that it located sixty-nine (69) pages of emails between Sabinsa and Pohl which Sabinsa maintains are confidential and privileged. (Dkt. No. 20-2 at ¶ 30). While Sabinsa offers to provide such emails for the Court's *in camera* review, the Court finds such review unnecessary because the Certification and other documents proffered in support of Sabinsa's Motion are sufficient for the Court's review of the instant Motion.

4

at p. 10). He argues that no such relationship arose where Sabinsa did not pay for any legal services and rejected the proposed Agreement. (Dkt. No. 21 at pp. 10-11). Pohl further contends that RPC 1.9 is not triggered because the prior conversations between him and Sabinsa related to a product not at issue in this suit and, therefore, any prior relationship is not related to this lawsuit. (Dkt. No. 21 at pp. 1-14). Pohl also argues that RPCs 1.7 and 1.8 do not warrant his disqualification because: (1) HP Ingredients and the third-party defendants have all consented to his representation, (Dkt. No. 21 at p. 16), and (2) there is no evidence that PPA has an impermissible financial arrangement with HP Ingredients, (Dkt. No. 21 at p. 15). Accordingly, Pohl asks the Court to deny Sabinsa's Motion.

## III. LEGAL STANDARD

Motions to disqualify are typically disfavored because disqualification can be a "drastic measure which courts should hesitate to impose except when absolutely necessary." *Carlyle Towers Condominium Ass'n v. Crossland Sav., FSB*, 944 F. Supp. 341, 345 (D.N.J. 1996) (internal quotation marks and citation omitted). In considering a motion to disqualify, the Court should weigh relative hardships, a party's ability to select counsel of its choice, and the applicable ethics rules and professional standards. *See id.*; *see also Steel v. General Motors Corp.*, 912 F. Supp. 724, 733 (D.N.J. 1995) ("Resolution of a motion to disqualify requires the court to balance the need to maintain the highest standards of the legal profession against a client's right to freely choose his counsel." (internal quotation and editing marks omitted)). *Accord Twenty-First Century Rail Corp. v. New Jersey Transit Corp.*, 210 N.J. 264, 273 (2012).

"Although doubts are to be resolved in favor of disqualification, the party seeking disqualification must carry a 'heavy burden' and must meet a 'high standard of proof' before a lawyer is disqualified." *Alexander v. Primerica Holdings, Inc.*, 822 F. Supp. 1099, 1114 (D.N.J.

5

1993) (quoting *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983)). If a motion to disqualify is based on an alleged former representation, then the party seeking disqualification bears "the initial burden of production" to show "that the lawyer(s) for whom disqualification is sought formerly represented their present adverse party and that the present litigation is materially adverse to the former client[.]" *City of Atlantic City v. Trupos*, 201 N.J. 447, 462 (2010). Once that burden is met, then the attorney whose disqualification is sought must "demonstrate that the matter or matters in which he . . . represented the former client are not the same or substantially related to the controversy in which the disqualification motion is brought." *Id.* at 462-63. The burden of persuasion, at all times, lies with the movant. *Id.* at 463.

Local Civil Rule 103.1 subjects members of the Bar of this District Court to the New Jersey RPCs. L. Civ. R. 103.1(a). Here, Sabinsa asserts that Pohl is disqualified under RPC 1.9, as well as RPCs 1.7(a) and 1.8(i). RPC 1.9 provides that:

> [a] lawyer who has represented a client in a matter shall not thereafter represent another client in the same or a substantially related matter in which that client's interests are materially adverse to the interests of the former client unless the former client gives informed consent confirmed in writing.

R.P.C. 1.9(a). Matters are "substantially related" under this RPC if

> (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, or (2) facts relevant to the prior representation are both relevant and material to the subsequent representation.

*Trupos*, 201 N.J. at 467. Whether matters are substantially related is a fact-intensive inquiry. *Id.*

RPC 1.7 prohibits concurrent conflicts of interest where "the representation of one client will be directly adverse to another client" or "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." R.P.C. 1.7(a). RPC 1.8(i)

6

precludes an attorney from acquiring "a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client," except where the lawyer acquires a lien to secure his fees or expenses, or contracts for a reasonable contingent fee in a civil matter. R.P.C. 1.8(i).

## IV. ANALYSIS

In the instant Motion, Sabinsa argues that RPC 1.9 requires Pohl's disqualification based on Pohl's prior relationship with Sabinsa and, even if it did not, RPCs 1.7(a) and 1.8(i) would disqualify Pohl because he has a personal and proprietary interest in the subject matter of this suit.

### A. RPC 1.9

The New Jersey Supreme Court has clarified that disqualification under RPC 1.9 arises where: (1) there was a prior representation; (2) the interests in the current matter are "materially adverse" to the interests of the prior client; and (3) the matters are substantially related to one another. *Trupos*, 210 N.J. at 462-63; *see also Fragoso v. Zhejun Piao*, 433 F. Supp. 3d 623, 629 (D.N.J. 2019). Here, Pohl disputes that the first and third elements are met; that is, whether there was a prior attorney-client relationship between Pohl and Sabinsa and whether the prior dealings between Pohl and Sabinsa are substantially similar to the issues presented in this action. (*See* Dkt. No. 21 at p. 10).

#### *Prior Representation*

Turning first to whether there was, indeed, a prior representation, Sabinsa acknowledges that there was no formal written contract or payment of fees between Sabinsa and Pohl. (*See* Dkt. No. 20-1 at pp. 13-14). Rather, Sabinsa contends that an implied attorney-client relationship existed based on months-long conversations and discussions between Majeed and Pohl. (Dkt. No. 20-1 at p. 14). Sabinsa contends that it reasonably understood Pohl to be serving as its attorney beyond just an initial consultation and believed it eventually would compensate Pohl, although it

ultimately rejected Pohl's offer to enter into "something akin to a joint venture agreement" in exchange for legal services. (Dkt. No. 20-1 at p. 14). In opposing the Motion, Pohl argues that he never maintained an attorney-client relationship with Sabinsa, as evidenced by Sabinsa's rejection of the contract proposed by PPA and by the lack of any payments between Sabinsa and Pohl and/or PPA. (Dkt. No. 21 at pp. 10-11).

Under New Jersey law, "an attorney-client relationship may be express or implied." *Speeney v. Rutgers*, 673 F. App'x 149, 153 (3d Cir. 2016) (applying New Jersey law). An implied relationship exists if "'a person manifests to a lawyer the person's intent that the lawyer provide legal services to the person,' 'the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services.'" *Id.* (quoting *Dixon Ticonderoga v. Estate of O'Connor*, 248 F.3d 151, 169 (3d Cir. 2001), citing *Herbert v. Haytaian*, 292 N.J. Super. 426, 436 (App. Div. 1996)). Critically, courts applying New Jersey law have found that:

> [t]he creation of an attorney-client relationship does not rest on whether the client ultimately decides not to retain the lawyer or whether the lawyer submits a bill. When, as here, the prospective client requests the lawyer to undertake the representation, the lawyer agrees to do so and preliminary conversations are held between the attorney and client regarding the case, then an attorney-client relationship is created.

*Herbert*, 292 N.J. Super. at 436. A finding of an implied attorney-client relationship must be based on more than a subjective belief; the belief must be "objectively reasonable under the totality of the circumstances[.]" *Oestreicher v. Rutgers*, No. 02-959, 2015 WL 6460423, at *6 (D.N.J. Oct. 26, 2015) (internal quotation marks and citation omitted).

Here, Sabinsa and Pohl never reached an agreement on written terms governing their relationship. The parties agree that Sabinsa did not make any payments to Pohl or his law firm.

As a result, there was no express attorney-client relationship. *See Speeney*, 673 F. App'x at 153 (finding no express attorney-client relationship where similar facts were not disputed).

Nevertheless, the Court finds that an implied attorney-client relationship did exist. Majeed, through his Certification, avers that he, as founder of Sabinsa, engaged in extended confidential discussions about Sabinsa's intellectual property interests and strategy decisions, as well as competitive analyses. (*See* Dkt. No. 20-2 at pp. 4-9). Among other matters, Sabinsa shared with Pohl proprietary financial and pricing data, intellectual property strategies in litigation and patent prosecution, supply chain issues, and long-term business projections. (*See, e.g.*, Dkt. No. 20-2 at ¶¶ 17-18, 20, 22, 27, 29). Sabinsa also proffers correspondence between Majeed and Pohl, dated April 12, 2020, in which it is evident that Pohl had received confidential information from Sabinsa and offered legal advice in response. (Dkt. No. 20-3). Indeed, Pohl does not appear to dispute that he received, reviewed, and analyzed Sabinsa's confidential information.

Through the certification of Majeed, Sabinsa sets forth sufficient evidence that it sought Pohl's legal services and reasonably relied on Pohl for his legal expertise. Under the totality of the circumstances, it was objectively reasonable for Sabinsa to believe that Pohl was acting as its attorney and that it could rely upon Pohl to act as its attorney. Sabinsa relayed its intent to seek legal advice from Pohl, and Pohl did not "manifest [a] lack of consent to do so." *Speeney*, 673 F. App'x at 153. Indeed, Pohl and Sabinsa continued their conversations even after Sabinsa rejected the proposed Agreement. Furthermore, based on the nature of the extensive conversations and information provided, Pohl knew, or should have known, that Sabinsa would rely upon his legal services and advice. *See id.* For those reasons, the Court finds that an implied attorney-client relationship existed between Sabinsa and Pohl.

9

### *Substantially Related*

Having found that an attorney-client relationship existed between Sabinsa and Pohl, the Court next turns to whether the prior representation is substantially related to the controversy at issue here.

"[M]atters are deemed 'substantially related' if (1) the lawyer for whom disqualification is sought received confidential information from the former client that can be used against that client in the subsequent representation of parties adverse to the former client, **or** (2) facts relevant to the prior representation are both relevant and material to the subsequent representation." *See Trupos*, 201 N.J. at 467 (emphasis supplied). The New Jersey Supreme Court has clarified that the standard aims to protect privileged information "while also requiring a fact-sensitive analysis to ensure that the congruity of facts, and not merely similar legal theories, governs whether an attorney ethically may act adverse to a form client." *Id.* (citing RPC 1.6(a)). The burden of production—but not the burden of persuasion—shifts to the lawyer for whom disqualification is sought to show that the matters are not substantially related. *Id.* at 463.

The matters will be deemed "substantially related" if Pohl received confidential information from Sabinsa that can be used against Sabinsa here, or the facts relevant to the prior representation are relevant and material to the instant lawsuit. Sabinsa relies on the former factor— that Pohl received confidential information that can be used against it in this action—to argue that the matters are substantially related. (*See* Dkt. No. 20-1 at p. 15; Dkt. No. 25 at p. 5). Pohl contends that neither factor of the substantially-related test is met. (*See* Dkt. No. 21 at pp. 11-14). Because Sabinsa does not assert that the facts relevant to prior representation are relevant here, the Court will only address the first factor—that is, whether Pohl received confidential information that can be used against Sabinsa in this action.

Critically, Pohl does not appear to contest that he received confidential information from Sabinsa. (*See* Dkt. No. 21). Rather, Pohl contends that Sabinsa's confidential information did not relate to the specific product or trademark at issue in the Complaint. (*See* Dkt. No. 21 at pp. 11-14). An inquiry under *Trupos*, however, focuses on whether the confidential information received in the prior relationship can be used in the instant matter, not whether the matters at issue are the same. Here, Sabinsa shared with Pohl its confidential information and strategies relating to sensitive matters, like intellectual property, litigation, competition, and pricing. Pohl neither refutes receipt of this confidential information nor offers any explanation for how such information cannot be used against Sabinsa here.

Indeed, information related to pricing strategies and the competitive market can be relevant to whether there is a likelihood of confusion under the Lanham Act. *See A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 211-13 (3d Cir. 2000) (noting as relevant factors "the price of the goods" and marketing channels). Notably, Pohl attaches to his Certification in Opposition to the instant Motion a letter dated July 27, 2021 from him to Sabinsa that relates to the lawsuit *sub judice*. (Dkt. No. 21-12). In that letter, Pohl demands that Sabinsa provide financial and pricing information related to the PANICIN product. (Dkt. No. 21-12). Moreover, the Complaint in this matter seeks the Court to order that Sabinsa provide an accounting of all sales and profits. (Dkt. No. 1, "Prayer for Relief" ¶ 8). As Sabinsa points out, Pohl's knowledge as to "Sabinsa's sales, profit margin, overhead, and supply chain challenges are all pertinent to HP [Ingredient]'s potential monetary recovery" in the event HP Ingredients is successful in establishing liability. (Dkt. No. 25 at pp. 6-7). As a result, confidential information as to Sabinsa's revenue, pricing, and competitive strategies may be relevant on HP Ingredient's claims in this lawsuit.

Similarly, Sabinsa's confidential information relating to intellectual property and litigation strategy can be used against it in this intellectual property dispute. Because Pohl received confidential information relating to Sabinsa's intellectual property, litigation, and pricing strategies, it is not unreasonable to believe that such information can be used against Sabinsa in this matter. *See, e.g., Carreno v. City of Newark*, 834 F. Supp. 2d 217, 231 (D.N.J. 2011) (finding attorney's receipt of "abundant confidential information" can be used to benefit his current client, providing an "unfair advantage"); *H2O Plus, LLC v. Arch Personal Care Products, L.P.*, No. 10-3089, 2011 WL 1078584, at *4 (D.N.J. March 21, 2011) (affirming Magistrate Judge's finding that matters were substantially related under RPC 1.9 because there was sufficient evidence that confidential information was shared that could be used against the plaintiff-former client).

Accordingly, the Court is persuaded that the matters are substantially related because Sabinsa shared confidential information with Pohl that can be used in the matter-in-suit.[2] The Court recognizes the competing interest of HP Ingredients' right to counsel of its choosing; nevertheless, weighing the various interests, the Court finds that RPC 1.9 calls for Pohl's disqualification as counsel for HP Ingredients in this matter.[3]

---

[2] Pohl argues, in the alternative, that even if a conflict exists, disqualification is not warranted because "it did nothing to create this conflict." (Dkt. No. 21 at p. 14 (citing *Carlyle Towers*, 944 F. Supp. at 347)). The Court finds that contention inapplicable here. The District Court in *Carlyle Towers* reasoned that disqualification was not required because, in part, the law firm sought to be disqualified did not create the conflict; however, the Court, there, applied RPC 1.7, which governs conflicts with current clients, not RPC 1.9, and involved a conflict that arose due to a corporate acquisition, a situation not present here. *See Carlyle Towers*, 944 F. Supp. at 346.

[3] The parties do not dispute that Sabinsa did not consent to Pohl's representation of HP Ingredients in this lawsuit. (*See* Dkt. No. 20-2 at ¶ 34). As a result, the exception to RPC 1.9 where conflicts are waived through written informed consent is not applicable here. *See* R.P.C. 1.9.

12

### B. RPCs 1.7 AND 1.8

Because the Court finds that Pohl is disqualified pursuant to RPC 1.9, the Court declines to address the application of RPCs 1.7 and 1.8 here.

### V. CONCLUSION

Having considered the submissions of the parties, and for the reasons set forth above,

**IT IS, THEREFORE**, on this 10th day of August 2022, hereby

**ORDERED** that Sabinsa's Motion to Disqualify (Dkt. No. 20) is **GRANTED**; and it is further

**ORDERED** that the Clerk of the Court shall terminate the motion at Docket Entry Numbered 20.

**SO ORDERED.**

HONORABLE RUKHSANAH L. SINGH
UNITED STATES MAGISTRATE JUDGE